UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>)<br>) |
| v. | )<br>) |
| | ) Case No. |
| VEIN CENTERS FOR EXCELLENCE, INC., | )<br>)<br>) |
| **Serve:**<br>Michael D. Laycob<br>Registered Agent<br>689 Craig Road<br>St. Louis, MO 63141 | )<br>)<br>)<br>)<br>)<br>) |
| Defendant. | )<br>) |

## COMPLAINT

Plaintiff, American Family Mutual Insurance Company (herein "American Family"), alleges as follows:

## PRELIMINARY STATEMENT

1. This case requests a declaration from the Court regarding the respective rights, duties and obligations of the parties under insurance policies issued to Defendant Vein Centers for Excellence ("Vein Centers").

2. American Family issued a policy of insurance to Defendant Vein Centers insuring defendant from October 28, 2007 through October 28, 2008, which would include the fax of September 15, 2008.

3.  On December 23, 2011, a class action lawsuit was initially filed in St. Louis County Circuit Court, which was removed to U.S. District Court on January 31, 2012, by Vein Centers, and is currently pending as 4:12-cv-00174-CDP St. Louis Heart Center, Inc. v. Vein Centers for Excellence, Inc., and arises out of the alleged sending of unsolicited advertisements via facsimile to multiple recipients in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.  The lawsuit was originally filed state court was known as Case Number 15SL-CC05050 and styled <u>St. Louis Heart Center, Inc. v. Vein Centers for Excellence, Inc.</u> (herein the "Heart Center" action).

## PARTIES

3.  American Family is, and, at all relevant times was, a corporation organized and existing under the laws of the State of Wisconsin, with its principal place of business in Madison, Wisconsin.  American Family is, and at all relevant times was, a corporation authorized to transact the business of insurance in the State of Missouri.

4.  Upon information and belief, Defendant Vein Centers for Excellence, Inc. was a Missouri corporation with its principal place of business located in St. Louis County, Missouri, whose registered agent was Michael Laycob, who is located at 689 Craig Road, St. Louis County, Missouri, 63141.

5.  Jurisdiction is proper in this Court based on diversity of the citizenship of the parties as set forth above in that the matter is a potential class action and seeking damages of $500 per violation and treble damages of $1,500 per violation for each plaintiff in the class and in the Plaintiff's Motion for Class Certification and in the Class Action Petition, alleges that there are more than 40 forty other persons or entities in the class, and, therefore, the matter in

2

controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. §1332(a) and is a justiciable matter under 28 U.S.C. §2201(a).

6. Venue is proper in this Court because the underlying action, upon which this action is based, is pending in the St. Louis County Circuit Court, Missouri, and the events and circumstances giving rise to the allegations contained in the underlying action occurred predominantly within the St. Louis County, Missouri area. Further, Defendant in this matter is a citizen of Missouri and have its principal place of business in St. Louis County, Missouri.

## NATURE OF THE CLAIM

7. American Family brings this action against Defendants seeking a declaratory judgment regarding its duties to defend and indemnify Vein Centers against claims in a case pending in U.S. District Court brought by Heart Center, on behalf of a class of individuals similarly situated, and arising from Vein Centers' alleged wrongful sending of unsolicited facsimile advertisements to members of the Plaintiff class.

8. An actual controversy exists regarding the rights, duties and obligations of the parties with respect to coverage for the Heart Center Action under the insurance policy issued by American Family to Vein Centers.

9. A judicial declaration is necessary so that the parties can ascertain their rights, duties and obligations under the Policies.

## FACTS

10. Vein Centers, is the named insured under a Businessowners Policy issued by American Family – Policy Number 24XG853004, effective October 28, 2007 to October 28,

2008, with limits of liability of $2,000,000 per occurrence (hereinafter " Businessowners Policy"), and said is attached hereto, and incorporated herein, as Exhibit 1.

11. Vein Centers, is also the named insured under a Commercial Liability Umbrella Policy issued by American Family – Policy Number 24XG853002, effective October 28, 2007 to October 28, 2008, with limits of liability of $1,000,000 per occurrence (hereinafter "Umbrella Policy"). The Umbrella Policy is attached hereto, and incorporated herein, as Exhibit 2.

11. Vein Centers is a business operation in St. Louis County, Missouri, and is believed to provide services in the health care field relating to treatment options for vein related problems and conditions.

12. On December 23, 2011, a class action Petition was initially filed in the Circuit Court of St. Louis County, Case Number 15SL-CC05050 and styled <u>St. Louis Heart Center, Inc. v. Vein Centers for Excellence, Inc</u>. for allegedly sending unsolicited advertisements via facsimile to multiple recipients. (A copy of the Heart Center Class Action Petition is attached hereto, and incorporated herein as Exhibit 3).

14. Heart Center filed the Class Action Petition on behalf of itself and other similar situated individuals and/or businesses that received unsolicited facsimile advertisements from Vein Centers constituted violations of the Telephone Consumer Protection Act 47 U.S.C. Section 227 (hereinafter "TCPA").

15. Heart Center alleges that the TCPA provides a right of action to enjoin violations from sending unsolicited facsimile advertisements. According to the Petition, the TCPA provides for statutory damages of $500 per violation which may be tripled for any knowing or

4

willful violations of the TCPA and that it authorizes injunctive relief seeking the enjoining of Defendants from sending TCPA-violating facsimile advertisements in the future.

16. Heart Center further alleges that Vein Center failed to first obtain the recipients' prior express permission or invitation, did not have a prior established business relationship with the recipients, and that the facsimile advertisements, did not have an adequate opt out notice on the subject fax because it did not include a facsimile number to send an opt out request and alleges that it did not state that the recipient may make a request to the sender of the advertisement not to send any future advertisements to a facsimile within 30 days. (Exhibit 3).

17. Heart Center contends that the class of Plaintiffs is entitled to damages under the TCPA based on the unsolicited facsimiles so that even if the Defendants had obtained the fax numbers through a prior relationship with class members or through voluntary consent, this does not eliminate the TCPA's opt out notice requirement, and Heart Center alleges that the faxes used ink, toner and paper and use of time from business activities. (Exhibit 3).

18. To the extent that Vein Centers' facsimile advertisements were sent in knowing violation of the TCPA, Heart Center contends that the Court is authorized to increase the amount of the award per violation to an amount equal to, but not more than, three times the $500 statutory fine. Thus, Heart Center request that the class Plaintiffs be awarded $1,500 per knowing violation.

19. Although Count III alleged violations of the Missouri Consumer Fraud and Deceptive Business Practices Act, Chapter 407 RSMO, alleging that the unlawful faxes constituted an unfair practice under the Missouri Merchandising Practices Act (MMPA), Chapter

407 RSMO, said Count III was dismissed without prejudice by Heart Center on February 16, 2012, and is longer part of the Class Action Petition. (Exhibit 4).

20. The Class Action Petition initially alleged that four (4) separate faxes were sent in violation of the TCPA, however, since the first three (3) faxes identified as Exhibits 1 through 3 in the Class Action Petition were sent prior to December 23, 2007, they were barred by the applicable statute of limitations and said faxes as Exhibits 1 through 3 of the Class Action and were ordered stricken from the record by U.S. District Court Judge Perry. (Exhibit 5, Memorandum and Order of March 14, 2012).

21. The only remaining fax that is still the subject of the Class Action Petition, was allegedly sent on September 15, 2008 and is identified in the Class Action Petition as Exhibit 4 (Exhibit 3).

22. On its second Count for conversion (Count II), Heart Center alleges that by sending the unlawful faxes, Vein Centers converted to their own use ink or toner and paper belonging to the Plaintiff and class members, and that it appropriated to its own use said paper and ink or toner used to print faxes and that the appropriation was wrongful and without authorization. (Exhibit 3).

23. The Plaintiff's Amended Motion for Class Certification as to the Class Petition filed by Heart Center against Vein Center was filed on April 29, 2013, (Exhibit 6, attached) and the Memorandum and Order granting the Amended Motion for Class Certification (Exhibit 7, attached).

24. Vein Centers provided notice of the Heart Center Action and American Family agreed to defend Defendants under a reservation of rights. American Family continues to provide Defendants with a defense in the Heart Center lawsuit.

## BUSINESSOWNERS POLICY

25. In the Businessowners Policy issued to Vein Centers, #24XG853004, under **SECTION II – LIABILITY** the policy states as follows

   A. **Coverages.**
     1. **Business liability**

       a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. We may at our discretion, investigate any "occurrence" and settle any claim that may result.

       b.    This insurance applies:

          (1.) To "bodily injury" and "property damage" only if;

          (a)    The 'bodily injury' or 'property damage' is caused by an

          'occurrence' that takes place in the 'coverage territory';

The term "occurrence" is defined in your policy as follows:

13. "Occurrence" means an accident including continuous or repeated exposure to substantially the same general harmful conditions.

26. In addition, in the Policy, #24XG853004, under **SECTION II – LIABILITY** the policy contains Exclusions under Section B. (attached hereto as Exhibit 8, page 1).

   B.   **Exclusions**

7

### 1. Applicable To Business Liability Coverage

This insurance does not apply to:

#### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

27. Also under Policy #24XG853004, there is the following Exclusion under Section B. (attached hereto as Exhibit 8, page 5).

### B. Exclusions

#### s. Distribution of Material in Violation of Statutes

"Bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

>  (1) The Telephone Consumer Protection Act (TCPA) including any amendment of or addition to such law; or

>  (2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

>  (3) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information."

28. In addition to the aforementioned exclusion, there is also an exclusion for punitive damages, (Exhibit 9), which is set forth below:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

### EXCLUSION - PUNITIVE DAMAGES

This endorsement modifies insurance provided under the following:

**BUSINESSOWNERS COVERAGE FORM**

The following is added to Paragraph **B. Exclusions** in **Section II – Liability**

This insurance does not apply to:

**Punitive Damages**

Punitive or exemplary damages.

29. There is no coverage under the Businessowners Policy for the Heart Center Action allegations because the allegations under the TCPA violations do not allege bodily injury or property damage, and, therefore, American Family has no duty to defend; nor is there coverage for any lawsuit seeking damages because the Heart Center Action does not allege bodily injury or property damage, nor does it allege bodily injury or property damage that was caused by an occurrence as defined under the policy.

30. The alleged TCPA violations are clearly excluded from the policy because the Heart Center Action alleges that all of the actions of Vein Centers violated the TCPA and insurance policy clearly excludes allegations of actions that constitute violations of statutes, including specifically violations of the TCPA.

31. Additionally, Count II for conversion does not constitute an accident. Vein Centers knew that by transmitting the transmissions they would inevitably end up being received by the fax numbers they were sent to where they would be printed and occupy the recipients' fax machines, and, thereafter printed on those machines, which Vein Centers knowingly deprived the recipients' of paper and toner, which was an intentional act.

32. The exclusion for the TCPA violations would still apply to alternative allegations in the Heart Center Action pleading that the faxes sent by Vein Centers were not intended to be sent to any recipients where the sending was not authorized by law since the sending of the faxes still arise directly or indirectly out of the violation or alleged violation of the TCPA, and, therefore, excluded under Exclusions contained in the Businessowners Policy.

33. The punitive damages endorsement exclusion would apply to the claim seeking treble damages under the TCPA, since treble damages are a form of exemplary damages.

9

## UMBRELLA POLICY

33. Under American Family Umbrella Policy issued to Vein Centers, policy #24XG853002, the coverage portion of the policy contains the following clause:

SECTION I – COVERAGES

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1  Insuring Agreement**
   a. We will pay on behalf of the insured the ultimate net loss in excess of the retained limit because of bodily and property damage to which this insurance applies. . .
   b. This insurance applies to "bodily injury" and "property damage" only if:
      (1.) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory":

The term "occurrence" is defined in the policy as follows:

**SECTION V – DEFINITIONS**

13. "Occurrence" – means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

34. The Umbrella Policy, policy #24XG853002, also contains an endorsement (attached separately hereto as Exhibit 10) that states as follows:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY. EXCLUSION – VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION**

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

   A. The following exclusion is added to Paragraph 2, **Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability**

   **2. Exclusions**

   This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

10

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

    a.    The Telephone Consumer Protection Act (TCPA) including any amendment of or addition to such law; or

    b.    The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

    c.    Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**B.** The following exclusion is added to Paragraph 2, Exclusions of Section I – **Coverage B – Personal And Advertising Injury Liability**

**2. Exclusions**

This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

    a.    The Telephone Consumer Protection Act (TCPA) including any amendment of or addition to such law; or

    b.    The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

    c.    Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

35.    There is also a punitive damage exclusion in the Umbrella Policy (Exhibit 11):

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

**PUNITIVE DAMAGES EXCLUSION**

This endorsement modifies insurance provided under the COMMERCIAL LIABILITY UMBRELLA POLICY

36. There is no coverage under the Umbrella Policy for the Heart Center Action allegations because the allegations under the TCPA violations do not allege bodily injury or property damage, and, therefore, American Family has no duty to defend; nor is there coverage for any lawsuit seeking damages because the Heart Center Action does not allege bodily injury or property damage, nor does it allege bodily injury or property damage that was caused by an occurrence as defined under the policy.

37. The TCPA violations are clearly excluded from the Umbrella Policy because the Heart Center Action alleges that all of the actions of Vein Centers violated the TCPA and insurance policy clearly excludes allegations of actions that constitute violations of statutes, including specifically violations of the TCPA.

38. Additionally, Count II for conversion does not constitute an accident under the Umbrella Policy. Vein Centers knew that by transmitting the transmissions they would inevitably end up being received by the fax numbers they were sent to where they would be printed and occupy the recipients' fax machines, and, thereafter printed on those machines, which Vein Centers knowingly deprived the recipients' of paper and toner, which was an intentional act.

39. The exclusion for the TCPA violations would still apply to alternative allegations in the Heart Center Action pleading that the faxes sent by Vein Centers were not intended to be sent to any recipients where the sending was not authorized by law since the sending of the faxes still arise directly or indirectly out of the violation or alleged violation of the TCPA, and, therefore, excluded under Exclusions contained in the Umbrella Policy.

40. The punitive damages endorsement exclusion would apply to the claim seeking treble damages under the TCPA, since treble damages are a form of exemplary damages.

41. The exclusion would still apply because even though the Class Action Petition by Heart Center pleads alternatively that the faxes were not intended to be sent to any recipients where the sending was not authorized by law, the sending of the faxes still arises directly or indirectly out of the violation or alleged violation of the TCPA, and, therefore, excluded under the Umbrella Policy.

42. The exclusions would apply to Count II for conversion because the alleged conversion arises directly or indirectly out of the violation or alleged violation of the TCPA, and, therefore, excluded under the exclusion.

43. There is no coverage for any claim for treble or punitive damages as set forth in the following exclusion contained in the Umbrella Policy, (attached separately hereto as Exhibit 5):

44. Included in the Heart Center Action are claims injunctive relief, attorneys' fees and expenses including costs and expenses of class notice and claim administration, all of which would be excluded under the aforementioned exclusions.

45. American Family contends that it has no duty to defend Vein Centers in the Class Action Petition, or to indemnify it in the event of a settlement or finding of liability against said defendant.

46. American Family further contends that it has no duty to pay Heart Center or any of the Plaintiffs any amount under the policy because the claims made based on the allegations

contained in the Class Action Petition are excluded under both the Businessowners Policy and the Umbrella Policy.

WHEREFORE, Plaintiff American Family Mutual Insurance Company respectfully requests that this Court enter judgment as follows:

a. Declaring the rights, status and obligations of the parties under the Policy and Umbrella Policy, including, but not limited to, the following:

(i) A declaration that there is no coverage under either the Businessowners Policy or the Umbrella Policy issued to Vein Centers for Excellence, Inc., for the damages sought in the Class Action Petition arising from the alleged TCPA allegations or the alleged conversion and that American Family does not have a duty to indemnify Vein Centers for Excellence, Inc. in the Class Action Petition;

(ii) A declaration that, under both the Businessowners Policy and Umbrella Policy, American Family does not have a duty to defend Vein Centers for Excellence, Inc. in the Class Action Petition;

(iii) A declaration that American Family is entitled to reimbursement from Vein Centers for Excellence, Inc. in the Class Action Petition;

(iv) A declaration that American Family does not have a duty to pay St. Louis Heart Center, Inc. any amount under the Businessowners Policy or Umbrella Policy;

b. For judgment against Vein Centers for Excellence, Inc. for the amounts paid by American Family in defense and/or for representation of Vein Centers for Excellence, Inc. and

for any amounts paid to settle or pay any judgment against Vein Centers for Excellence, Inc. in connection with the Class Action;

    c.    For costs of suit incurred herein; and

    d.    For such other and further relief as this Court may deem just and proper.

KORTENHOF MCGLYNN & BURNS, LLC

/s/ Kenneth M. Lander
Kenneth M. Lander - #30296MO
1015 Locust Street, Suite 710
St. Louis, Missouri 63101
Phone: (314) 621-5757
Fax: (314) 621-5799
E-mail: ken@kmblaw1.com
Attorneys for Plaintiff American
Family Mutual Insurance Company