UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) ) | Case No. 4:15CV1544 JCH |
| ST. LOUIS HEART CENTER, INC. and VEIN CENTERS FOR EXCELLENCE, INC., | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff American Family Mutual Insurance Company's Motion for Summary Judgment, and Defendant St. Louis Heart Center, Inc.'s Motion for Summary Judgment, both filed June 23, 2017. (ECF Nos. 65, 68). The motions are fully briefed and ready for disposition.

**BACKGROUND**

Defendant Vein Centers for Excellence, Inc. ("Vein Centers") provided marketing and graphic design for doctors providing varicose and spider vein procedures. (Plaintiff's Statement of Uncontroverted Facts ("Plaintiff's Facts"), ¶ 1).[1] Plaintiff American Family Mutual Insurance Company ("American Family" or "Plaintiff") issued a Businessowners Policy to Vein Centers, policy number 24XG853004, with a policy period of October 28, 2007, through October 28, 2008. (*Id.*, ¶¶ 32, 34). American Family later renewed the Businessowners Policy to Vein Centers, with a policy period of October 28, 2008, through October 28, 2009. (*Id.*, ¶ 33).

1

As relevant here, the Businessowners Policies contained the following provisions:

A. **Coverages**

   **1**     **Business liability**

       **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. We may at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

   * * * *

       **b.** This insurance applies:

       **(1)** To "bodily injury" and "property damage" only if;

           **(a)** The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory';

           **(b)** The "bodily injury" or "property damage" occurs during the policy period;

   * * * *

B. **Exclusions**

   1. **Applicable To Business Liability Coverage**
   This insurance does not apply to:

       **a.**    **Expected Or Intended Injury**

   "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

(ECF No. 67-11, PP. 38, 40, 132, 134).

---

1 Vein Centers is no longer in business, having been dissolved as a corporation. (Plaintiff's Facts, ¶¶ 3, 4).

According to American Family, the Businessowners Policies further contained the following relevant exclusion[2]:

> **s.     Distribution of Material in Violation of Statutes**
>
> "Bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:
>
> (1)  The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or
> (2)  The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or
> (3)  Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

(ECF No. 67-11, PP. 44, 138). Finally, the Businessowners Policies contained the following endorsement:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**
**EXCLUSION - PUNITIVE DAMAGES**

This endorsement modifies insurance provided under the following:

> BUSINESSOWNERS COVERAGE FORM
>
> The following is added to Paragraph **B. Exclusions** in **Section II — Liability**
>
> This insurance does not apply to:
>
> **Punitive Damages**
>
> Punitive or exemplary damages.

(ECF No. 67-11, PP. 70, 164).

---

2 St. Louis Heart Center, Inc. ("St. Louis Heart") disputes that this provision is validly part of the Businessowners Policies. (*See* St. Louis Heart's Response to American Family's Statement of Facts, ¶ 41).

3

American Family further issued Commercial Liability Umbrella Policies to Vein Centers, with policy periods of October 28, 2007, through October 28, 2008, and October 28, 2008, through October 28, 2009. (Plaintiff's Facts, ¶ 44). As relevant here, the Umbrella Policies contained the following provisions:

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.    Insuring Agreement**

    **a.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. . . .

\* \* \* \*

    **b.** This insurance applies to "bodily injury" and "property damage" only if:

        (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
        (2)    The "bodily injury" or "property damage" occurs during the policy period;

\* \* \* \*

**2.    Exclusions**
This insurance does not apply to:

    **a.    Expected or Intended Injury**
"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property."

\* \* \* \*

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.    Insuring Agreement**

    **a.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "personal and advertising injury" to which this insurance applies. . .

\* \* \* \*

    **b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

(ECF No. 67-11, PP. 188-89, 229, 191, 232-33).

The Umbrella Policies further contained the following relevant endorsement:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**
**PUNITIVE DAMAGES EXCLUSION**

This endorsement modifies insurance provided under the COMMERCIAL LIABILITY UMBRELLA POLICY

This insurance does not apply to punitive or exemplary damages awarded against any insured.

(ECF No. 67-11, PP. 219, 258). The Umbrella Policy in effect from October 28, 2007, through October 28, 2008, further contained the following additional endorsement:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**
**EXCLUSION — VIOLATION OF STATUTES THAT GOVERN**
**EMAILS, FAX, PHONE CALLS OR OTHER METHODS OF**
**SENDING MATERIAL OR INFORMATION**

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**A.** The following exclusion is added to Paragraph 2, **Exclusions of Section I —Coverage A— Bodily Injury And Property Damage Liability**

    **2.**     **Exclusions**

This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:
a. The Telephone Consumer Protection Act (TCPA) including any amendment of or addition to such law; or
b. The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

5

c. Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**B.** The following exclusion is added to Paragraph **2, Exclusions of Section I—Coverage B—Personal And Advertising Injury Liability**

**2.Exclusions**

This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:
a. The Telephone Consumer Protection Act (TCPA) including any amendment of or addition to such law; or
b. The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or
c. Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

(ECF No. 67-11, P. 202). Finally, the Umbrella Policy in effect from October 28, 2008, through October 28, 2009, contained the following additional exclusions:

    **u.**    **Distribution Of Material In Violation Of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:
(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or
(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or
(3) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

    **(17)**    **Distribution Of Material In Violation Of Statutes**
"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:
(a) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or
(b) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

> (c) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

(ECF No. 67-11, PP. 232, 234).

Vein Centers obtained new clients, i.e., doctors, by, among other ways, sending faxes. (Plaintiff's Facts, ¶ 2). On or about December 23, 2011, St. Louis Heart filed a Class Action Petition against Vein Centers in the Circuit Court of St. Louis County, Missouri, asserting claims for violations of the Telephone Consumer Protection Act ("TCPA") (Count I), conversion for unsolicited faxing (Count II), and violations of the Missouri Consumer Fraud and Deceptive Business Practices Act (Count III).[3] (*Id.*, ¶¶ 5, 8-9, 13). St. Louis Heart's action was removed to federal court on January 31, 2012, and presently is pending as *St. Louis Heart Center, Inc. v. Vein Centers for Excellence, Inc.*, Case No. 4:12CV174 CDP (the "Heart Center Action"). (*Id.* ¶ 7).[4] Vein Centers tendered the Heart Center Action to American Family for defense and indemnification, and American Family agreed to provide a defense to Vein Centers subject to a reservation of rights. (*Id.*, ¶¶ 30, 31).[5]

American Family filed its Complaint in this matter on October 8, 2015. (ECF No. 1). In its Second Amended Complaint[6], filed November 14, 2016, American Family seeks a declaration (i) that there is no coverage under either the Businessowners Policies or the Umbrella Policies for the damages sought in the Heart Center Action, and that American Family has no duty to indemnify

---

3 St. Louis Heart voluntarily dismissed Count III of its Class Action Petition on or about February 16, 2012. (Plaintiff's Facts, ¶ 14). The parties further stipulated to the dismissal of the conversion claim with prejudice. (*See* ECF No. 92).
4 The Honorable Catherine D. Perry certified a class in the Heart Center Action on December 11, 2013, but then decertified the class on July 5, 2017. (Case No. 4:12CV174 CDP, ECF Nos. 42, 109).
5 As discussed below, St. Louis Heart contends American Family failed to make the disclosures required for a valid reservation of rights. (St. Louis Heart's Response to American Family's Facts, ¶ 31).
6 The Second Amended Complaint names both Vein Centers and St. Louis Heart as Defendants. On July 6, 2017, the Clerk of Court entered default against Vein Centers. (*See* ECF No. 69).

Vein Centers in the Heart Center Action; (ii) that under both the Businessowners Policies and the Umbrella Policies, American Family has no duty to defend Vein Centers in the Heart Center Action; and (iii) that American Family has no duty to pay St. Louis Heart or any other Plaintiff in the Heart Center Action any amount under the Businessowners Policies or the Umbrella Policies. (ECF No. 50, P. 15).

As stated above, the parties filed competing Motions for Summary Judgment on June 23, 2017. (ECF Nos. 65, 68).

## **SUMMARY JUDGMENT STANDARD**

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*.

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. *Anderson*, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most

8

favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Id*. at 249.

**DISCUSSION**

In its Motion for Summary Judgment, American Family asserts both the Businessowners Policies and the Umbrella Policies specifically exclude coverage for "property damages" and "personal and advertising injury" "arising directly or indirectly out of any action or omission that violates or is alleged to violate" the TCPA. (Plaintiff's Motion for Summary Judgment, ¶ 15). In response (and in its own Motion for Summary Judgment), St. Louis Heart posits two reasons why coverage is nevertheless mandated.

## I. Conflict Of Interest

In its Motion for Summary Judgment, St. Louis Heart first asserts American Family has waived its coverage defenses by controlling the defense of Vein Centers in the Heart Center Action without disclosing conflicts of interest, or offering paid, independent counsel. (St. Louis Heart's Brief in Support of its Motion for Summary Judgment ("St. Louis Heart's Memo in Support"), PP. 2-5). In response, American Family contends it satisfied its obligations under Missouri law, as Vein Centers was fully informed of American Family's coverage position and accepted its defense subject to a reservation of rights. (Plaintiff's Memorandum in Opposition to St. Louis Heart's Motion for Summary Judgment ("Plaintiff's Opp."), P. 6).

As noted above, St. Louis Heart filed its Class Action Petition against Vein Centers in the Circuit Court of St. Louis County, Missouri on or about December 23, 2011. Immediately upon notification of the suit, American Family sent two letters to Mr. Michael Laycob, an attorney designated as Vein Centers' registered agent. (*See* ECF Nos. 78-2, 78-3; Plaintiff's Statement of

9

Additional Material Facts in Response to St. Louis Heart's Motion for Summary Judgment ("Plaintiff's Additional Facts"), ¶ 1). In the letters, American Family notified Vein Centers that it was reserving its rights under the Businessowners Policy and the Umbrella Policy, stating that "[b]y investigating this matter or by defending [Vein Centers] in this lawsuit American Family is not admitting that it owes any obligation or duty under the policy and is not waiving any rights or defenses it may have under the policy." (ECF Nos. 78-2, P. 2; 78-3, P. 2).[7] American Family continued to inform Vein Centers that subject to its reservation of rights, it had retained an attorney to defend Vein Centers. (*Id.*). American Family concluded its letters as follows:

> For these reasons and for others which may become known American Family Mutual Insurance Company respectfully reserves its rights under its policy. A final determination of coverage will be made at a later date. Because of the possibility that there might not be coverage under the policy and because of the possibility of personal exposure for your company over and above the policy limits you may wish to employ your own personal attorney to represent your interests. Please feel free to do so. Any attorney you retain would be at your own expense and would work alongside [American Family's chosen attorney's] firm which will continue to be our lead attorney.
>
> If there are additional facts which you would like us to consider when we make our final determination of coverage, please let us know. If you have any questions regarding this letter or regarding the progress of the lawsuit please feel free to contact us at any time.
>
> If you have any objection to our providing of a defense for you pursuant to this Reservation of Rights, please contact us immediately.

(ECF Nos. 78-2, P. 5; 78-3, P. 4). It is undisputed that neither attorney Laycob nor any other Vein Centers representative asked any questions concerning the reservation of rights, or expressed any concerns about the defense being provided. (Plaintiff's Opp., P. 6, citing Plaintiff's Additional Facts, ¶ 71).

---

7 American Family enumerated the reasons it reserved its rights in both letters. (*See* ECF Nos. 78-2, PP. 2-4; 78-3,

"Under Missouri law, a 'reservation of rights' refers to an insurer's offer 'to defend its insured but reserve the right to later disclaim coverage.'" *Heubel Materials Handling Co., Inc. v. Universal Underwriters Ins. Co.*, 704 F.3d 558, 563 (8th Cir. 2013) (quoting *Truck Ins. Exch. v. Prairie Framing, LLC*, 162 S.W.3d 64, 88 (Mo.App. 2005) (per curiam)). "The insured may reject an insurer's offer to defend with a reservation of rights, and if the insurer refuses to withdraw the reservation of rights, the insured is then free to hire independent counsel to defend the underlying suit and obtain compensation from the insurer if the underlying suit later is held to be covered by the policy." *Id.* (citation omitted).

Upon consideration of the foregoing, the Court finds that with its reservation of rights correspondence, American Family satisfied its obligations under Missouri law. American Family informed Vein Centers of specific policy provisions that might preclude coverage, and encouraged Vein Centers to consider employing its own attorney to protect its interests. Finally, while American Family stated that any attorney so retained would be at Vein Centers' expense, as noted above such expense would have been subject to reimbursement from American Family if the underlying suit was found to be covered by the policy.[8]

## II. **Failure To Provide Notice**

Under Missouri law, the interpretation of an insurance policy is a question of law. *United Fire & Cas. Co. v. Titan Contractors Serv., Inc.*, 751 F.3d 880, 883 (8th Cir. 2014) (citing *Schmitz v.*

---

PP. 2-4).

8 While St. Louis Heart correctly notes American Family failed to offer paid, independent counsel, it cites to no binding precedent that American Family was required to do so at the outset. *Cf Western Heritage Ins. Co. v. Love*, 24 F.Supp.3d 866, 877 (W.D. Mo. 2014) (citations omitted) (emphasis added) ("The purpose of a reservation of rights letter is to enable an insured to make an informed decision as to whether it should, because of a possible conflict of interest between itself and its insurer, take some action in order to protect its interest. If the insurer decides to defend the insured subject to a reservation of rights, the insured may elect to allow the insurer to defend it, or it may refuse to allow a defense under a reservation of rights, *instead retaining its own attorney to defend it and perhaps sue the insurer later*.").

*Great Am. Assurance Co.*, 337 S.W.3d 700, 705 (Mo. banc 2011)). "If the policy language is unambiguous, 'the contract will be enforced as written.'" *Id.* (quoting *Rice v. Shelter Mut. Ins. Co.*, 301 S.W.3d 43, 47 (Mo. banc 2009)).

"[A]n insurer owes a duty to defend its insured whenever the complaint in the underlying lawsuit alleges facts that give rise to a claim potentially within the policy's coverage." *Travelers Indem. Co. of Connecticut v. Margulis*, 2016 WL 7242160, at *2 (E.D. Mo. Dec. 15, 2016) (internal quotations and citations omitted).

> While the duty to defend is determined by comparing the language of the insurance policy with the allegations in the [underlying] complaint, the insured has the burden of proving that the underlying action is covered by the insurance policy. Because an insurer's duty to defend is broader than its duty to indemnify, if [the insurer] owes no duty to defend, it likewise owes no duty to indemnify.

*Id.* (internal quotations and citations omitted).

As noted above, in the underlying lawsuit St. Louis Heart asserts a claim for violations of the TCPA. In its Motion for Summary Judgment, American Family contends coverage for the claim is barred by the following exclusion, contained in the Businessowners Policies[9]:

> **s.** **Distribution of Material in Violation of Statutes**
>
> "Bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:
>
> (1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or
> (2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or
> (3) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

---

9 St. Louis Heart does not dispute that the "Distribution of Material in Violation of Statutes" exclusions are enforceable in the Umbrella Policies.

(ECF No. 67-11, PP. 44, 138). The Court finds the "language of the [Distribution of Material in] Violation of Statutes Exclusion is clear and unambiguous to the extent it excludes coverage for claims based on alleged violations of the TCPA, and therefore must be enforced as written" unless St. Louis Heart can show the exclusion never went into effect. *Nationwide Mut. Ins. Co. v. Harris Medical Associates, LLC*, 973 F.Supp.2d 1045, 1053 (E.D. Mo. 2013) (citations omitted).

In its own Motion for Summary Judgment, St. Louis Heart claims that the Distribution of Material in Violation of Statutes exclusion is not validly part of the Businessowners Policies. (St. Louis Heart's Memo in Support, PP. 6-9). Specifically, St. Louis Heart asserts that because the new exclusion constituted a nonrenewal[10], American Family had an obligation under both the Businessowners Policies and Missouri law to provide notice of the reduction in coverage. St. Louis Heart maintains American Family has failed to meet its burden of demonstrating that such notice was provided to Vein Centers, and so St. Louis Heart's Motion for Summary Judgment must be granted.

Missouri Revised Statutes § 379.883 provides in relevant part as follows:

> No notice of nonrenewal of a commercial casualty insurance policy shall be effective unless mailed or delivered by the insurer to the named insured at least sixty days prior to the effective date of the nonrenewal.

Mo.Rev.Stat. § 379.883(2). Similarly, the Businessowners Policies provided that in order not to renew the Policies, American Family was required to mail written notice of nonrenewal "at least sixty days prior to the effective date of the nonrenewal." (*See, e.g.*, ECF No. 67-11, P. 79).

American Family asserts it provided adequate notice of the Distribution of Material in Violation of Statutes exclusion, by mailing said notice to Vein Centers in a timely manner.

---

[10] An insurer's "tendering of a policy with a significant change in coverage constitute[s] a constructive nonrenewal," triggering notice requirements. *Resolution Trust Corp. v. American Cas. Co. of Reading, PA*, 874 F.Supp. 961, 967 (E.D. Mo. 1995).

(Plaintiff's Opp., PP. 11-14). In support of this assertion American Family provides deposition testimony from Ms. Deborah Woodcock, one of its corporate representatives, who testified that (1) American Family sent a Coverage Summary Letter ("CSL") to Vein Centers on August 27, 2007 (more than 60 days before the Businessowners Policies' renewal date of October 28, 2007); and (2) that attached to the CSL was Policyholder Communication ("PLC") 28075, setting forth the newly instituted Distribution of Material in Violation of Statutes Exclusion. (Woodcock Deposition, ECF No. 68-6, PP. 28-29, 32-33, 40, 43, 65-70). St. Louis Heart counters that Ms. Woodcock's testimony is insufficient to demonstrate proper notice, as she acknowledged she did not personally send the PLC to Vein Centers, nor was there definitive proof in the various American Family computer systems that said letter was sent and received. (St. Louis Heart's Memo in Support, PP. 8-9).

Under Missouri law, "[t]here is a presumption that a letter duly mailed has been received by the addressee." *Insurance Placements, Inc. v. Utica Mut. Ins. Co.*, 917 S.W.2d 592, 595 (Mo. App. 1996) (citing *Shelter Mut. Ins. Co. v. Flint*, 837 S.W.2d 524, 528 (Mo. App. 1992)). "A letter is duly mailed when it is placed in an envelope with the correct address of the recipient, stamped with sufficient postage, and deposited in the mail." *Flint*, 837 S.W.2d at 528 (citation omitted). "When the customary volume of mail is large, so that direct proof that a particular letter was mailed is not feasible, evidence of the settled custom and usage of the sender in the regular and systematic transaction of its business is sufficient to give rise to the presumption of receipt by the addressee." *Id.* (internal quotations and citation omitted).

The presumption that a letter duly mailed has been received is rebuttable, "and when proof of proper mailing is adduced, it may be rebutted by evidence it was not, in fact, received." *Utica*, 917 S.W.2d at 595 (citation omitted). "Evidence of non-receipt, however, does not nullify the

presumption but leaves the question for the determination of the jury under all of the facts and circumstances of the case." *Id.*

Upon consideration of the foregoing, the Court finds St. Louis Heart fails to submit evidence sufficient to overcome the presumption of delivery and receipt. As noted above, American Family presented testimony from its corporate representative that in the regular course of its business, American Family would have sent both the CSL and the PLC to Vein Centers. St. Louis Heart offers no evidence, nor even allegation, to rebut the presumption that Vein Centers in fact received the CSL and PLC. Instead, St. Louis Heart merely speculates that American Family's normal business procedures were not followed in this case, and such conjecture is insufficient to carry its burden. The presumption that the Distribution of Material in Violation of Statutes exclusion was mailed and received, and thus became a valid part of the Businessowners Policies, thus stands, and so American Family's Motion for Summary Judgment on St. Louis Heart's TCPA claims must be granted.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that American Family's Motion for Summary Judgment (ECF No. 65) is **GRANTED**, and judgment is entered in favor of American Family with respect to its claim it has no duty to defend or indemnify Vein Centers in the underlying suit filed by St. Louis Heart. A separate Judgment will accompany this Order.

**IT IS FURTHER ORDERED** that St. Louis Heart's Motion for Summary Judgment (ECF No. 68) is **DENIED**.

Dated this 14th Day of August, 2017.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE